

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-4-2007

# Metro Life Ins Co v. Price

Precedential or Non-Precedential: Precedential

Docket No. 05-2927

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Metro Life Ins Co v. Price" (2007). *2007 Decisions.* Paper 358.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/358

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-2927
_____

METROPOLITAN LIFE INSURANCE COMPANY,

Appellant,

v.

SANDRA PRICE; SHANNON PRICE; ANDRE PRICE.


_____

On Appeal from the United States District Court
for the District of New Jersey
(No. 04-cv-05044)

District Judge: Honorable Faith S. Hochberg

Submitted Under Third Circuit LAR 34.1(a)
Thursday, January 25, 2007

Before: SCIRICA, <u>Chief</u> <u>Judge</u>, FUENTES and CHAGARES,
<u>Circuit</u> <u>Judges</u>.


_____

(Filed September 4, 2007)

Randi F. Knepper, Esq.
McElroy, Deutsch, Mulvaney & Carpenter, LLP
1300 Mount Kemble Ave.
P.O. Box 2075
Morristown, NJ 07962-2075

Counsel for Appellant

_____

OPINION OF THE COURT
_____

CHAGARES, Circuit Judge.

Appellant Metropolitan Life Insurance Company ("MetLife") is the claims fiduciary of an "employee welfare benefit plan." See Employee Retirement Income Security Act of 1974 ("ERISA") § 3(1), 29 U.S.C. § 1002(1). After one of the plan's participants died, MetLife received competing claims to the decedent's life-insurance benefits. It responded by filing this interpleader action against the competing claimants. The District Court raised the issue of subject matter jurisdiction *sua sponte* and dismissed. In our view, however, the District Court had federal question jurisdiction. Accordingly, we will vacate and remand.

I.

The New Jersey Transit Corporation sponsors a Basic Life Plan for the benefit of its employees. The plan is funded through a group life insurance policy issued by MetLife to New Jersey Transit. MetLife is the plan's "claims fiduciary."

Paul Price was a participant in the plan. He was a bus driver with New Jersey Transit and had enrolled for $20,000 in life insurance benefits. In May 2002, Paul passed away. He was survived by his widow, Sandra Price, and his children from a previous marriage, Shannon and Andre Price.

After Paul's death, his widow and his children submitted competing claims for the life insurance benefits. MetLife investigated the matter and discovered that, in or around February 2000, Paul designated his widow as the primary beneficiary. MetLife then informed the children's attorney that it was denying their claims. MetLife explained that it had a fiduciary duty "to administer claims in accordance with ERISA and the terms of the

2

plan." Appendix ("App.") 62-63. As such, it had to "pay the proceeds to the named beneficiary only."

The children's attorney requested a review of the claim. Paul's first marriage had ended in 1995 with a final judgment of divorce in New Jersey Superior Court. Paragraph 11 of that judgment specifically referenced Paul's life insurance:

> The Husband currently has life insurance upon his life. The Husband shall amend these policies in order to name the children of the marriage as irrevocable beneficiaries until such time as Andre Price, the son of the marriage[,] is emancipated. The Husband shall name the Wife as trustee.

App. 69. Since Andre remained unemancipated at the time of Paul's death, the children claimed they were the rightful beneficiaries under the divorce judgment's plain terms.

This left MetLife in a quandary. Under ERISA, it had a duty to administer claims "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). These documents instructed MetLife to pay the benefits to Paul's designated beneficiary—his widow. Under the New Jersey divorce judgment, however, the children were to be designated "irrevocable beneficiaries."

Normally, ERISA preempts any state law that "relate[s] to" an employee benefit plan. 29 U.S.C. § 1144(a); Egelhoff v. Egelhoff, 532 U.S. 141, 147-48 (2001). However, ERISA (as amended by the Retirement Equity Act of 1984) contains an exception from this general rule for "qualified domestic relations orders" ("QDROs"). 29 U.S.C. §§ 1144(b)(7), 1056(d)(3)(B)-(E); see Boggs v. Boggs, 520 U.S. 833, 846-47 (1997). A QDRO "assigns to an alternate payee the right to . . . receive all or a portion of the benefits payable with respect to a participant under a plan." 29 U.S.C. § 1056(d)(3)(B)(i).[1]

---

[1]A domestic relations order is a QDRO if it meets the requirements of 29 U.S.C. §§ 1056(d)(3)(C) & (D). Under §

3

MetLife informed the competing claimants that it could not tell "whether a court would find that th[e] divorce decree is a QDRO." App. 73. It noted that if the New Jersey judgment is a QDRO, then in all likelihood the children should get the $20,000. It further noted that if the judgment is not a QDRO, then Price's widow is entitled to the money.[2] MetLife stated that if the

---

1056(d)(3)(C), the domestic relations order must "clearly specif[y]" the following:

> (i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee,
> (ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,
> (iii) the number of payments or period to which such order applies, and
> (iv) each plan to which such order applies.

§ 1056(d)(3)(C). And under § 1056(d)(3)(D), a domestic relations order will be considered a QDRO "only if" it:

> (i) does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan,
> (ii) does not require the plan to provide increased benefits (determined on the basis of actuarial value), and
> (iii) does not require the payment of benefits to an alternate payee which are required to be paid to another alternate payee under another order previously determined to be a qualified domestic relations order.

§ 1056(d)(3)(D).

[2]Every Court of Appeals to address the question has held that "the § 1144(b)(7) exception to ERISA preemption applies to

4

claimants did not resolve the matter amicably, it would bring suit. Price's widow and the children negotiated, but they failed to reach an agreement. The children's attorney then asked MetLife to "[k]indly initiate an interpleader action." App. 75.

MetLife obliged, bringing this suit in the United States District Court for the District of New Jersey. On its own motion, the District Court raised the issue of subject matter jurisdiction and dismissed. This appeal followed. We review de novo the District Court's dismissal for lack of subject matter jurisdiction. IFC Interconsult, AG v. Safeguard Int'l Partners, LLC, 438 F.3d 298, 309 (3d Cir. 2006).

## II.

The equitable remedy of interpleader allows "a person holding property to join in a single suit two or more persons asserting claims to that property." NYLife Distrib., Inc. v. Adherence Group, Inc., 72 F.3d 371, 372 n.1 (3d Cir. 1995). The plaintiff in an interpleader action is a stakeholder that admits it is liable to one of the claimants, but fears the prospect of multiple liability. Interpleader allows the stakeholder to file suit, deposit the property with the court, and withdraw from the proceedings. The competing claimants are left to litigate between themselves. See Zechariah Chaffee, Jr., The Federal Interpleader Act of 1936: I, 45 Yale L.J. 963, 963 (1936). The result is a win-win situation. The stakeholder avoids multiple liability. The claimants settle their dispute in a single proceeding, without having to sue the stakeholder first and then face "the difficulties of finding assets and levying execution." Id. at 964.

There are two methods for bringing an interpleader in

---

all QDROs, whether they involve either pension or welfare plans." Metro. Life Ins. Co. v. Bigelow, 283 F.3d 436, 440 n.3 (2d Cir. 2002); Metro. Life Ins. Co. v. Pettit, 164 F.3d 857, 863 n.5 (4th Cir. 1998); Metro. Life Ins. Co. v. Marsh, 119 F.3d 415, 421 (6th Cir. 1997); Metro. Life Ins. Co. v. Wheaton, 42 F.3d 1080, 1083-84 (7th Cir. 1994); Carland v. Metro. Life Ins. Co., 935 F.2d 1114, 1119-20 (10th Cir. 1991).

federal court. The first is the interpleader statute, 28 U.S.C. § 1335. District Courts have subject matter jurisdiction under this provision if there is "minimal diversity" between two or more adverse claimants, and if the amount in controversy is $500 or more. See State Farm Fire & Cas. Co. v. Tashire, 386 U.S. 523, 530-31 (1967). The second is Federal Rule of Civil Procedure 22. Unlike its statutory counterpart, rule interpleader is no more than a procedural device; the plaintiff must plead and prove an independent basis for subject matter jurisdiction. See NYLife, 72 F.3d at 372 n.1; Commercial Union Ins. Co. v. United States, 999 F.2d 581, 584 (D.C. Cir. 1993).

In this case, MetLife does not rely on the interpleader statute, nor could it, as the adverse claimants are all New Jerseyans. Rather, it has styled its lawsuit as a rule interpleader action. MetLife argues that jurisdiction exists under the federal question statute, 28 U.S.C. § 1331, and ERISA's jurisdictional provision, 29 U.S.C. § 1132(e).

A federal question interpleader is a rarity. See 7 Charles Alan Wright et al., Federal Practice & Procedure § 1710 (3d ed. 2001); see also Donald L. Doernberg, What's Wrong with this Picture?: Rule Interpleader, the Anti-Injunction Act, In Personam Jurisdiction, and M.C. Escher, 67 U. Colo. L. Rev. 551, 565 n.56 (1996) ("The dearth of reported cases involving interpleader and federal question jurisdiction implies that although such cases can arise, they will be a small proportion of all federal interpleader actions."). Statutory "arising under" jurisdiction requires that a federal question appear on the face of the plaintiff's well-pleaded complaint. See Louisville & Nashville R.R. v. Mottley, 211 U.S. 149, 152 (1908). This requirement poses a problem for an interpleader plaintiff, as all the complaint seeks is an order releasing and discharging the plaintiff from liability. It is difficult to characterize such a request "as asserting either federal or state rights." Morongo Band of Mission Indians v. Cal. State Bd. of Equalization, 858 F.2d 1376, 1383 (9th Cir. 1988) (quoting Banco de Ponce v. Hinsdale Supermarket Corp., 663 F.Supp. 813, 816 (E.D.N.Y. 1987)). Thus, at least at first blush, it is hard to see how a request for interpleader could raise a federal question.

6

But only at first blush. Some interpleader actions do raise federal questions. Indeed, our sister courts of appeals have recognized that an interpleader "arises under" federal law when brought by an ERISA fiduciary against competing claimants to plan benefits. See, e.g., Metro. Life Ins. Co. v. Bigelow, 283 F.3d 436, 439-40 (2d Cir. 2002); Aetna Life Ins. Co. v. Bayona, 223 F.3d 1030, 1033-34 (9th Cir. 2000); Metro. Life Ins. Co. v. Marsh, 119 F.3d 415, 418 (6th Cir. 1997).

We agree with these courts. Federal question jurisdiction exists when the plaintiff's well-pleaded complaint establishes that "federal law creates the cause of action." Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 27-28 (1983).[3] MetLife brings this suit under section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3). That provision creates a cause of action for fiduciaries "to obtain . . . appropriate equitable relief . . . to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3)(B)(ii). As courts have noted, "[t]he interconnection between the basis of the District Court's jurisdiction—ERISA—and the elements of [an] ERISA claim[] makes it easy to confuse the question of the court's subject matter

---

[3]This so-called "creation test" is "[t]he most familiar definition of the statutory 'arising under' limitation." Franchise Tax, 463 U.S. at 8-9; see American Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260 (1916) (Holmes, J.) ("A suit arises under the law that creates the cause of action."). However, as Judge Friendly famously pointed out, "[i]t has come to be realized that Mr. Justice Holmes' formula is more useful for inclusion than for the exclusion for which it was intended." T.B. Harms Co. v. Eliscu, 339 F.2d 823, 827 (2d Cir. 1964). Jurisdiction also exists where "some substantial, disputed question of federal law is a necessary element of . . . [a] well-pleaded state claim[]." Franchise Tax, 463 U.S. at 13. And if federal law completely preempts a state claim, "the result is to convert complaints purportedly based on the preempted state law into complaints stating federal claims from their inception." In re Cmty. Bank of N. Va., 418 F.3d 277, 290 (3d Cir. 2005) (quotation marks omitted); see, e.g., Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 66-67 (1987). For purposes of this case, Justice Holmes' rule of inclusion is sufficient.

jurisdiction with the question of the plaintiff's ability to state a claim." Carlson v. Principal Fin. Group, 320 F.3d 301, 307 (2d Cir. 2003). The test we must apply is a familiar one. For jurisdictional purposes, the issue is not whether MetLife will ultimately be successful in sustaining its cause of action under section 502(a)(3). See Bell v. Hood, 327 U.S. 678, 681-82 (1946). Rather, "[d]ismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (quoting Oneida Indian Nation of N.Y. v. County of Oneida, 414 U.S. 661, 666 (1974)); see also Primax Recoveries, Inc. v. Gunter, 433 F.3d 515, 519 (6th Cir. 2006) ("An ERISA claim can be non-frivolous (or sufficiently substantial) even if it is unsuccessful and possibly verging on the foolhardy in light of prior precedent barring the relief sought.") (quotation marks omitted); Cement Masons Health & Welfare Trust Fund for N. Cal. v. Stone, 197 F.3d 1003, 1008 (9th Cir. 1999) ("[D]ismissal of an ERISA claim under § 1132(a)(3) is properly a dismissal on the merits rather than a dismissal for want of subject matter jurisdiction.").

Here, MetLife brings suit as a fiduciary, and it adequately invokes the District Court's subject matter jurisdiction by seeking "appropriate equitable relief . . . to enforce any provisions of this subchapter or the terms of the plan." ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). Specifically, MetLife seeks interpleader, which is a form of "equitable relief." See U.S. Fire Ins. Co. v. Asbestospray, Inc., 182 F.3d 201, 208 (3d Cir. 1999). Through its interpleader action, MetLife seeks to enforce the provisions of ERISA and the plan by ensuring that funds are disbursed to the proper beneficiary. See Aetna Life, 223 F.3d at 1034. MetLife thus presents a substantial, non-frivolous claim for relief under section 502(a)(3). This is enough to confer subject matter jurisdiction under ERISA. See Bell, 327 U.S. at 681-82.[4]

_____

[4]Even apart from MetLife's cause of action as a fiduciary, there may be an additional basis for subject matter jurisdiction in this case. A rule interpleader is quite similar to a declaratory

8

judgment action. Both the declaratory judgment statute and Rule 22 are purely procedural. See NYLife, 72 F.3d at 372 n.1; Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240 (1937). Neither provision enlarges the subject-matter jurisdiction of the federal courts. Compare Fed. R. Civ. P. 82 ("These rules shall not be construed to extend . . . the jurisdiction of the United States district courts . . . ."), with 28 U.S.C. § 2201 (authorizing a federal court to issue a declaratory judgment "[i]n a case of actual controversy *within its jurisdiction*") (emphasis added). Rather, both simply provide plaintiffs with a means to "anticipate and accelerate . . . coercive action[s] by . . . defendant[s]." Bell & Beckwith v. United States, 766 F.2d 910, 914 (6th Cir. 1985). Based on these similarities, some courts have held that the jurisdictional test applicable in declaratory judgment cases applies equally to a rule interpleader. See, e.g., Commercial Nat'l Bank of Chicago v. Demos, 18 F.3d 485, 488 (7th Cir. 1994); Commercial Union Ins. Co. v. United States, 999 F.2d 581, 585 (D.C. Cir. 1993); Morongo Band of Mission Indians v. Cal. State Bd. of Equalization, 858 F.2d 1376, 1384 (9th Cir. 1988); Bell & Beckwith, 766 F.2d at 913-14.

In the declaratory judgment context, "[f]ederal courts have regularly taken original jurisdiction over . . . suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question." Franchise Tax, 463 U.S. at 19; see also Richard H. Fallon, Jr., et. al, Hart & Wechsler's Federal Courts 900 (5th ed. 2003) (stating that Franchise Tax "appears to endorse" an approach that "would uphold jurisdiction over a declaratory action if jurisdiction would exist in a hypothetical nondeclaratory action brought *by either party* against the other."); but see Textron Lycoming Reciprocating Engine Div., Avco Corp. v. UAW, 523 U.S. 653, 659-60 (1998) (expressing doubt about whether a "declaratory-judgment complaint raising a *nonfederal* defense to an anticipated *federal* claim . . . *would* confer § 1331 jurisdiction") (emphasis in original). If the practice described by Franchise Tax is correct, and if the principle extends to rule interpleader, then jurisdiction exists whenever one of "the coercive actions anticipated by the [interpleader] complaint would arise under federal law." Morongo, 858 F.2d at 1385.

MetLife's interpleader complaint anticipates coercive

Presumably, the District Court agreed that MetLife's cause of action arises under federal law. Its jurisdictional inquiry focused on a different issue: exhaustion. "Except in limited circumstances," we have held, "a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan." Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 249 (3d Cir. 2002) (quotation omitted). Relying on that rule, the District Court noted that MetLife "assert[ed] federal jurisdiction under ERISA despite . . . having made no initial determination about which potential plan beneficiaries should be paid." District Court Order at 1. It reasoned that a federal court "sits in review of a decision of a plan administrator," and "it is the plan administrator's duty to make its own initial determination regarding who should be paid." Id. at 1-2. Absent such a determination, there was "no administrative record for th[e] Court to review." Id. at 2. Thus, the District Court held that jurisdiction was lacking.

The District Court's gloss on the exhaustion requirement raises two questions. First, should courts label ERISA's exhaustion requirement as a jurisdictional prerequisite to federal court adjudication? Second, labels aside, is there a "reverse exhaustion" requirement that limits a fiduciary's ability to bring an interpleader action? We address these questions in turn.

---

actions by both Price's widow and his children. Both hypothetical claims would seek to recover "benefits due . . . under the terms of [a] plan," 29 U.S.C. § 1132(a)(1)(B), and would necessarily present federal questions. See Taylor, 481 U.S. at 66-67. Thus, the approach adopted by our sister courts of appeals in cases like Bell & Beckwith and Morongo might provide an alternative basis for subject matter jurisdiction. Nonetheless, in light of our determination that federal law creates MetLife's cause of action, we need not take a position on the propriety of those decisions.

A.

A recent series of Supreme Court decisions provides helpful guidance on the uses and misuses of the word "jurisdiction." See Bowles v. Russell, 551 U.S. ---, 127 S. Ct. 2360 (2007); Arbaugh v. Y&H Corp., 546 U.S. 500, 126 S. Ct. 1235 (2006); Eberhart v. United States, 546 U.S. 12 (2005) (per curiam); Kontrick v. Ryan, 540 U.S. 443 (2004). These cases clarify that nonstatutory claim-processing rules are not properly labeled "jurisdictional." True "jurisdictional" limitations are set by the Constitution and by Congress, not by rules of procedure or judge-made doctrine. See Kontrick, 540 U.S. at 452 ("Only Congress may determine a lower federal court's subject-matter jurisdiction."); see also Bowles, 127 S. Ct. at 2364-65 & n.3 (same). Nonstatutory rules, "even if unalterable on a party's application, can nonetheless be forfeited if the party asserting the rule waits too long to raise the point." See Kontrick, 540 U.S. at 456.

As it explained these principles, the Supreme Court noted that its own past decisions had sometimes mislabeled nonstatutory rules as "jurisdictional." The Court described these casual invocations of the term as "drive-by jurisdictional rulings that should be accorded no precedential effect on the question whether the federal court had authority to adjudicate the claim in suit." Arbaugh, 126 S. Ct. at 1242-43 (quotation marks omitted).

Informed by the Supreme Court's instruction, we must assess whether ERISA's exhaustion doctrine is a "jurisdictional" mandate. Certainly, it is an important legal rule. We have recognized that requiring exhaustion of plan remedies helps to "'reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claim settlement; and to minimize the costs of claims settlement for all concerned.'" Harrow, 279 F.3d at 249 (quoting Amato v. Bernard, 618 F.2d 559, 567 (9th Cir. 1980)). In addition, exhaustion enhances the ability of fiduciaries "'to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making processes.'" Id. (quoting Amato, 618 F.2d at 567). It also has the salutary effect of "refining and defining the problem" for final

11

judicial resolution.  <u>Amato</u>, 618 F.2d at 568.

But as important as the rule may be, "ERISA nowhere mentions the exhaustion doctrine."  <u>Id.</u> at 566.  It is a judicial innovation fashioned with an eye toward "sound policy."  <u>Id.</u> at 567.  We have not required exhaustion where the claim seeks to enforce a statutory right under ERISA.  <u>Zipf v. AT&T</u>, 799 F.2d 889, 891-92 (3d Cir. 1986).  In addition, the failure to exhaust will be excused in cases where a fact-sensitive balancing of factors reveals that exhaustion would be futile.  <u>See</u> <u>Harrow</u>, 279 F.3d at 249-50.

This is not the stuff of a jurisdictional rule.  Congress has expressly provided for jurisdiction over ERISA cases in 29 U.S.C. § 1132(e).  Neither that provision nor any other part of ERISA contains an exhaustion requirement.  Thus, as a judicially-crafted doctrine, exhaustion places no limits on a court's adjudicatory power.  <u>See</u> <u>Arbaugh,</u> 126 S. Ct. at 1245; <u>Kontrick</u>, 540 U.S. at 452; <u>see also</u> <u>Paese v. Hartford Life & Accident Ins. Co.</u>, 449 F.3d 435, 445 (2d Cir. 2006)  ("[ERISA exhaustion] is purely a judge-made concept that developed in the absence of statutory language demonstrating that Congress intended to make [it] a jurisdictional requirement."); <u>Chailland v. Brown & Root, Inc.</u>, 45 F.3d 947, 950 n.6 (5th Cir. 1995) (same).

Furthermore, even aside from the Supreme Court's instruction, our own cases carefully distinguish "between prudential exhaustion and jurisdictional exhaustion."  <u>Wilson v. MVM, Inc.</u>, 475 F.3d 166, 174 (3d Cir. 2007); <u>see also</u> <u>Zipes v. Trans World Airlines, Inc.</u>, 455 U.S. 385, 393 (1982).  Prudential exhaustion "is generally judicially created."  <u>Wilson</u>, 475 F.3d at 174.  It reflects a judicial desire to "respect[] agency autonomy by allowing it to correct its own errors."  <u>Id.</u>  Unlike a rigid jurisdictional rule, prudential exhaustion provides flexible exceptions for "waiver, estoppel, tolling or futility."  <u>Id.</u>  ERISA's exhaustion requirement bears all the hallmarks of a nonjurisdictional prudential rule.  In addition to being judge-made, the doctrine's futility exception involves a discretionary balancing of interests.  Judicial prudence, not power, governs its application in a given case.

12

In reaching this conclusion, we have not overlooked the several cases that refer to ERISA exhaustion as "jurisdictional."[5] Two are particularly noteworthy. In Wolf v. National Shopmen Pension Fund, 728 F.2d 182 (3d Cir. 1984), we described our analysis as a "jurisdictional inquiry" and classified exhaustion as a necessary predicate to "federal jurisdiction." Id. at 186-87. In addition, the leading case in this area, Amato v. Bernard, 618 F.2d 559 (9th Cir. 1980), referred to the exhaustion of plan remedies in "jurisdiction[al]" terms. Id. at 566. Neither case, however, explained why or how a doctrine borne of "sound policy" qualified as "jurisdictional." Amato, 618 F.2d at 568. The opinions simply sprinkled their analyses with offhanded references to the term. See Arbaugh, 126 S. Ct. at 1242-43. They do not alter our conclusion that ERISA's exhaustion doctrine places no limits on a federal court's subject matter jurisdiction.

MetLife brought this interpleader action against Paul Price's widow and his children. Before the widow and the children ever filed a responsive pleading, the District Court acted in the name of subject matter jurisdiction and dismissed on exhaustion grounds. This was error. The exhaustion requirement is a nonjurisdictional affirmative defense. See Paese, 449 F.3d at 446; cf. Williams v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997).

B.

The question remains whether the affirmative defense of exhaustion bars MetLife's interpleader action. As noted above, our

_____

[5]See, e.g., Peterson v. Cont'l Cas. Co., 282 F.3d 112, 117 (2d Cir. 2002) ("[A]bsent a determination by the plan administrator, federal courts are without jurisdiction to adjudicate whether an employee is eligible for benefits under an ERISA plan."); Duffie v. Deere & Co., 111 F.3d 70, 72 n.2 (8th Cir. 1997) (per curiam) (referring to "the jurisdictional argument that [the claimant] failed to exhaust his remedies"); White v. Jacobs Eng'g Group Long Term Disability Benefit Plan, 896 F.2d 344, 346 (9th Cir. 1990) ("[A]ppellant did not exhaust his administrative remedies, and jurisdiction in the district court was improperly granted.").

13

cases hold that persons claiming plan benefits must generally "exhaust their administrative remedies before seeking judicial relief." Berger v. Edgewater Steel Co., 911 F.2d 911, 916 (3d Cir. 1990). Of course, MetLife is not a person claiming plan benefits. It is a fiduciary attempting to interplead the competing claimants. There is no Third Circuit precedent addressing the applicability of exhaustion principles in this context. The question for us, then, is whether a so-called "reverse exhaustion" requirement bars a plan fiduciary from bringing an interpleader action without first developing a record and rendering a final benefits decision.

The consensus view is that a fiduciary need not make a final benefits decision. Many courts have allowed the use of interpleader in ERISA benefits cases. See, e.g., Alliant Techsystems, Inc. v. Marks, 465 F.3d 864 (8th Cir. 2006); Metro. Life Ins. Co. v. Parker, 436 F.3d 1109 (9th Cir. 2006); Guardian Life Ins. Co. of Am. v. Finch, 395 F.3d 238 (5th Cir. 2004); Metro. Life Ins. Co. v. Bigelow, 283 F.3d 436 (2d Cir. 2002); Aetna Life Ins. Co. v. Bayona, 223 F.3d 1030 (9th Cir. 2000); Metro. Life Ins. Co. v. Marsh, 119 F.3d 415 (6th Cir. 1997). Almost none of them even mention the possibility of using exhaustion principles to bar interpleader actions. The prevailing view is that "[i]nterpleader is a valuable procedural device for ERISA plans who are confronted with conflicting multiple claims upon the proceeds of an individual's benefit plan." Trustees of Directors Guild of Am. Producer Pension Benefits Plans v. Tise, 234 F.3d 415, 426, as amended upon denial of reh'g, 255 F.3d 661 (9th Cir. 2000). If courts demanded a fully developed record and a final benefits decision, ERISA plans might face exposure to multiple lawsuits from disappointed claimants. Most courts allow fiduciaries to avoid this quandary by filing an interpleader complaint. See id.

But there are three reported decisions that, to varying degrees, support a reverse-exhaustion requirement in at least some interpleader cases. The first is Life Insurance Company of North America v. Nears, 926 F. Supp. 86 (W.D. La. 1996). There, a participant in two ERISA-controlled life-insurance policies failed to designate a beneficiary. When presented with competing claims to the benefits, the insurer brought an interpleader action. One of the policies contained a "facility of payment" clause. It stated that

14

"[a]ny amount of your . . . benefits for which there is no designated . . . beneficiary will be paid, at [the insurer's] option, to any of your following living relatives:  spouse, mother, father, child, or children, or to the executors or administrators of your estate."  Id. at 89.  Because the plan did not "rank the classes of relatives in any order or preference," the court "decline[d] to impose its subjective preference . . . where the insurer ha[d] clearly contracted for the discretion to exercise its own judgment."  Id.  The court thus denied the motion for interpleader as to that policy.

Forcier v. Forcier, 406 F. Supp. 2d 132 (D. Mass. 2005), also involved competing claims to a life-insurance policy with no designated beneficiary.  The court noted that since exhaustion is a prerequisite to claims for plan benefits, "[a]rguably . . . the inverse should be true" for interpleaders brought by plan fiduciaries: "absent good cause, insurers or plan administrators with discretionary power under ERISA plans should be required to exercise that discretion, and make a decision, before seeking judicial relief."  Id. at 140-41.  The court stated that this "reverse exhaustion approach ha[d] considerable superficial appeal."  Id. at 141.  The insurer had contracted to make a benefits decision "under a policy that it wrote and that it administer[ed]."  Id.  Having a federal court "step into the shoes of the insurer" might well "impede cost-effective administration."  Id.  But despite this concern, the court decided that reverse exhaustion was merely "preferable," not mandatory.  Id.  Interpleader, it reasoned, served the interests of both participants and beneficiaries by ensuring prompt, fair resolutions of competing claims.  Id. at 142.  The court determined that to dismiss on reverse-exhaustion grounds would only prolong disputes, as disappointed claimants would likely seek review in federal court.  Id.

On appeal in Forcier, the Court of Appeals for the First Circuit declined to address the reverse-exhaustion issue because the parties had not raised it.  See Forcier v. Metro. Life Ins. Co., 469 F.3d 178, 182 (1st Cir. 2006).  Parenthetically, though, the court noted that "on a going-forward basis" it might not "look with favor upon interpleader actions brought by insurers who, in the last analysis, are seeking to shift their responsibilities to the district court without any clear demonstration of a need for interpleader

15

relief." Id. at 182 n.3.

In our view, the analyses of both the Nears opinion (which endorsed a limited form of reverse exhaustion) and the Court of Appeals for the First Circuit's opinion in Forcier (which remained uncommitted) are persuasive. Nonetheless, whatever the merits of these opinions' reasoning, both are inapposite. In both cases, participants failed to designate beneficiaries, and the plans vested the fiduciaries with broad discretionary authority to distribute the proceeds. See Forcier, 469 F.3d at 185 ("MetLife contracted for an extremely free hand in deciding to whom . . . the policy's proceeds would be paid in the absence of a designated beneficiary."); Nears, 926 F. Supp. at 89 ("[T]he insurer has clearly contracted for the discretion to exercise its own judgment."). The sound judicial policy that animates the exhaustion doctrine applies with particular force when fiduciaries are exercising discretion granted by plan documents. Courts review such decisions under the deferential arbitrary and capricious standard. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); McLeod v. Hartford Life & Accident Ins. Co., 372 F.3d 618, 623 (3d Cir. 2004). This deference insulates the decision from undue judicial second guessing and increases the likelihood that exhaustion (or reverse exhaustion) will weed out frivolous claims, "'promot[ing] the consistent treatment of claims for benefits,'" and encouraging nonadversarial claim settlement. See Harrow, 279 F.3d at 249 (quoting Amato, 618 F.2d at 567).

Unlike the discretionary question at issue in Nears and Forcier, MetLife's decision in this case would receive no deference from a federal court. The dispute between Price's widow and his children turns on whether the New Jersey divorce judgment is a QDRO. That is a question "of statutory construction over which reviewing courts exercise de novo review." Files v. ExxonMobil Pension Plan, 428 F.3d 478, 486 (3d Cir. 2005), cert. denied 126 S. Ct. 2304 (2006). In light of that standard, the policy considerations underlying the exhaustion doctrine do not apply. First, mandating reverse exhaustion would do little to reduce frivolous lawsuits. See Harrow, 279 F.3d at 249. Persons with frivolous claims could still get a plenary "second look" in federal court. Second, reverse exhaustion in these circumstances is unlikely to produce a

16

significant reduction in costs or an increase in nonadversarial claim settlement.  See id.  On the contrary, with plenary review in the offing, the disappointed claimant will have every incentive to continue the battle in federal court.  Third, little is gained by having fiduciaries "refin[e] and defin[e] the problem" for final judicial resolution.  See Amato, 618 F.2d at 568.  Questions of statutory interpretation fall within the "peculiar expertise" of the courts, and the fiduciary's position on the matter will be of limited utility.  Cf. Zipf v. AT&T, 799 F.2d 889, 893 (3d Cir. 1986).  In short, even if "sound policy" supports the imposition of a reverse-exhaustion requirement in some cases, that policy does not apply when the question centers on the existence of a QDRO.

Policy aside, litigants in at least one case have argued that 29 U.S.C. § 1056(d)(3)(G)(i)(II) prohibits interpleaders filed before an initial QDRO decision by the fiduciary.  See Metro. Life Ins. Co. v. Bigelow, 283 F.3d 436, 442 (2d Cir. 2002).  Section 1056(d)(3)(G)(i)(II) states that "within a reasonable period after" receiving a domestic relations order, "the plan administrator shall determine whether such order is a qualified domestic relations order and notify the participant and each alternate payee of such determination."  The Court of Appeals for the Second Circuit held that bringing an interpleader complaint is an acceptable way to "determin[e]" an order's QDRO status.  Bigelow, 283 F.3d at 442.  We agree.  A plan administrator's interpretation and application of the statutory QDRO requirements is no more authoritative (and no less final) than that of the competing claimants.  An interpleader complaint effectuates a prompt, final determination of the QDRO issue.  As the Court of Appeals for the Second Circuit pointed out, cutting off the use of interpleader "would assist none of the interested parties."  Bigelow, 283 F.3d at 442.  It would also make it far more difficult for administrators to "determin[e]" conclusively an order's QDRO status "within a reasonable period."  See § 1056(d)(3)(G)(i)(II).  We therefore hold that neither ERISA nor the prudential doctrine of exhaustion bars MetLife's interpleader action.

IV.

In sum, the District Court erred when it dismissed MetLife's

17

complaint for want of subject matter jurisdiction. MetLife's well-pleaded complaint establishes that its cause of action arises under ERISA. The exhaustion requirement is a nonjurisdictional affirmative defense, and that affirmative defense did not require MetLife to make a decision on the QDRO issue before seeking interpleader in federal court. We will vacate the District Court's judgment and remand for further proceedings consistent with this opinion.